[No. 19708.   Department One.   March 25, 1926.]

Mae Reynolds Fennel, *Respondent*, v. Yellow Cab Company, *Defendant*, Seattle Taxicab Company et al., *Appellants*.[1]

[1] Municipal Corporations (380, 383)—Use of Streets—Violation of Ordinance—Contributory Negligence—"Pedestrian." Where a street car discharges a passenger in a street intersection, and the passenger waits for the car to pass and then crosses the street diagonally, in violation of an ordinance forbidding "pedestrians" to cross intersections diagonally, she is guilty of contributory negligence as a matter of law; being a "pedestrian" from the time she alighted.

[2] Same (392) — Use of Streets — Instructions — Last Clear Chance. An instruction upon the last clear chance is properly refused as incomplete and incorrect where it instructed the jury that defendant was liable for running down a pedestrian at a street intersection, if the jury believed from a preponderance of the evidence that plaintiff had unintentionally placed herself in a position of danger and that her negligence had ceased, and that thereafter the defendant had the last clear chance to avoid the injury.

Appeal from an order of the superior court for King county, Hall, J., entered June 23, 1925, granting plaintiff a new trial, after a verdict in favor of the defendant, in an action for personal injuries, sustained by a pedestrian struck by a taxicab.   Reversed.

*J. Speed Smith* and *Henry Elliott, Jr.,* for appellants.
*Henry Clay Agnew,* for respondent.

Holcomb, J.—The accident out of which this action grows occurred at about 5:30 p. m. on December 5, 1923, at the intersection of Twelfth Avenue south and Atlantic street, in Seattle.   Twelfth Avenue south runs north to south, intersecting Atlantic street running east to west.   There is a double track street car line along the middle of Twelfth Avenue south.   Respond-

[1]Reported in 244 Pac. 253.

ent was on her way home from down town on a south-bound street car. She got off at the intersection of Twelfth Avenue south and Atlantic street, and was walking towards the northeast corner of the intersection, when she was struck by the front end of a taxicab operated by an employee of appellant. This taxicab had been traveling south on Twelfth Avenue south back of the street car from which respondent had alighted, and upon arriving at the intersection of these streets, turned to go east on Atlantic street. Both Atlantic street and Twelfth Avenue south are paved, and § 125, of Ordinance 41695 of Seattle, pleaded by appellant, provided:

"On paved streets at intersections pedestrians shall not cross such streets diagonally."

Respondent testified that the car she alighted from was a front entrance car, having no exit at the back end, and that, when it arrived at the intersection of Atlantic and Twelfth, it ran beyond the north margin of the street intersection, where cars usually stop to allow passengers to get off the front end at the street crossing-walk. When it stopped as it did in the intersection, she went around to the rear of the street car and, when it had passed a little beyond her, she proceeded towards the northeast corner, diagonally. Later, she said she "did not go very much diagonally." Atlantic street, according to the map and scale in the record, is 24 feet wide, and Twelfth Avenue south is 42 feet wide. If, then, she alighted where she said she did and let the street car move up so that she could proceed across to the northeast corner of the street intersection to the sidewalk, she must have proceeded quite diagonally. She said that it was raining slightly, but that she did not raise her umbrella.

. Upon the issues raised by the pleadings, the court instructed as to the law of the road and the duty of drivers of vehicles as to giving and sounding warnings, very correctly.

Upon the requirement of the city ordinance, regarding pedestrians walking diagonally across paved streets, the following instruction was given:

"You are instructed, members of the jury, that the city ordinance in effect at the time this accident happened provided that on public streets at intersections pedestrians shall not cross said intersections diagonally; and if you find from the evidence in this case that the plaintiff at the time this accident occurred was crossing the intersection of Atlantic street and Twelfth Avenue south in a diagonal direction, then I instruct you that she was guilty of negligence; and if you further find that her action in crossing said intersection diagonally caused or contributed to causing her injury then she cannot recover and your verdict must be for the defendant."

The jury found for the appellant, and therefore must have found that respondent crossed the intersection diagonally, as prohibited by ordinance, and that such manner of crossing caused or contributed to her injury. Upon motion for a new trial based upon the grounds that the verdict was against law and the evidence and upon errors of law occurring at the trial and excepted to at the time by respondent, the trial court granted a new trial on the sole ground that the foregoing instruction was erroneous. It seems that the trial court was of the opinion that respondent could not be classified as a pedestrian crossing an intersection within the meaning of the city ordinance.

[1] If respondent is not to be classified as a pedestrian, we do not know what classification she would be given. When she was upon the street car she was a passenger; when she alighted therefrom she became a

pedestrian. When she alighted from the street car upon a paved street intersection, the ordinance forbade her crossing the intersection diagonally.

It is admitted by respondent that it is the law in this state that, "An act done in violation of positive law is in itself negligence." Respondent herself submitted an instruction to the same effect. Therefore the violation of the provisions of the ordinance was a violation of positive law, and was in itself negligence. *Twedt v. Seattle Taxicab Co.*, 121 Wash. 562, 210 Pac. 20.

Respondent contends, however, that the instruction as given, took from the jury the question of last clear chance, which was a matter that should have been submitted to the jury, and upon which respondent requested an instruction.

[2] Although it is very doubtful whether there was any situation in this case shown by the evidence calling for the application of the rule of last clear chance, the instruction requested by respondent and refused by the court was not correct in law, in that it did not define to the jury our application of the rule of last clear chance.

The requested instruction was:

"And you are further instructed that if you believe from a fair preponderance of the evidence that plaintiff had unintentionally placed herself in a position of danger, that her negligence had ceased, and that thereafter the defendant had the last clear chance to avoid injury to the plaintiff, then the defendant is liable."

Our rule as to what constitutes last clear chance has been announced so often, that it is only necessary to refer to a few of the cases to show that this instruction was not complete and correct. *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943; *Chase v. Seattle Taxicab & Transfer Co.*, 78 Wash. 537, 139

Pac. 499; *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684; *Snyder v. Smith,* 124 Wash. 21, 213 Pac. 682; *Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302.

It is also well settled here, that a requested instruction must be good in law in order to be grounds for any relief, if refused. If there were any grounds for the application of the rule as to last clear chance, the trial court was justified for the reason that the requested instruction was incomplete and incorrect. At all events, the trial court based its order granting a new trial upon the one instruction given by it, which it thought to be erroneous, upon the theory, apparently, that respondent was not a pedestrian within the meaning of the ordinance.

We think respondent must have been classed as a pedestrian under the terms of the ordinance in question; that the instruction given by the court was correct as a matter of law, and that the verdict of the jury under the evidence and the instructions was justified.

The judgment is therefore reversed, with instructions to enter a judgment upon the verdict.

Tolman, C. J., Mackintosh, Fullerton, and Main, JJ., concur.