BREVARD COUNTY BUILDING AND LOAN ASSOCIATION, a corporation, *Plaintiff in Error,* vs. A. B. SUMRALL, *Defendant in Error.*

Division A.

Opinion filed March 17, 1931.

*David Peel,* for Plaintiff in Error;

*Noah·B. Butt,* for Defendant in Error.

ELLIS, J.—The Brevard County Building and Loan Association is a corporation having its principal office at Melbourne, Florida. In April 1926 it had employed The Wachtel Company, a corporation, with offices at Daytona to sell stock. The terms upon which the stock was to be sold were one hundred and five dollars a unit; five dollars per unit at the time of purchase and fifty cents per unit per month in accordance with the by-laws of the Company. Each unit consisted of twenty shares of stock of the par value of five dollars per share. The five dollars required to be paid on each unit of twenty shares was called a membership fee. ∶

On the 28th day of April, A. D., 1926, A. B. Sumrall subscribed for one hundred units of the capital stock of the Company and agreed to pay one hundred dollars per unit payable at the rate of fifty cents per month per unit and agreed to pay and did pay five dollars per unit or five hundred dollars as a membership fee.

On the 3rd day of May following he subscribed for an additional one hundred units of the capital stock upon the same terms. In each transaction he subscribed a document called a "stock subscription" in the following language:

"STOCK SUBSCRIPTION

THE BREVARD COUNTY BUILDING AND LOAN ASSOCIATION COCOA-TITUSVILLE-MELBOURNE, FLORIDA.

"The purpose of this Company is to engage in the business of a Building and Loan Company. This subscription together with the By-Laws, shall constitute the contract between the member and the Company.

"No person has authority to change or alter the terms of this subscription or bind the Company to any statement not contained in this subscription or the printed circulars issued by this Company.

"The undersigned hereby subscribed for 100 units of the Capital Stock of this Company and agrees to pay therefor $100.00 per unit, payable as follows: not less than 50c per month on each unit herein subscribed for.

"All expenses of this company shall be paid from earnings only. The subscriber hereby agrees to pay with this subscription a membership fee of $5.00 per unit, to be used to safeguard capital and earnings of the Company; defray the expenses of organization; equipment and establishment and obtaining subscriptions and cannot be withdrawn, but is always transferable.

DATE April 26, 1926 NAME A. B. Sumrall
 ADDRESS Cocoa, Fla.

WITNESS Paul Lechner

MAKE ALL CHECKS PAYABLE TO BREVARD COUNTY BUILDING & LOAN ASSOCIATION".

The documents were alike except as to date, one being dated April 26, 1926, and the other dated May 3, 1926. In each case he received a certificate from the Corporation under its seal and signed by its Secretary in the following words:

"Incorporated under the Laws of the State of Florida
No. 414 Units 100

THE BREVARD COUNTY BUILDING AND LOAN
ASSOCIATION
Melbourne, Florida

MEMBERSHIP CERTIFICATE

THIS IS TO CERTIFY THAT A. B. Sumrall has paid the sum of Five hundred Dollars ($500.00) and is hereby entitled to membership in and is a member of

The Brevard County Building and Loan Association and One Hundred units of the par value of $100.00, (each unit consisting of twenty shares of stock of the par value of $5.00 per share) are reserved for said member, subject to payments thereon to be made by him at the rate of not less than fifty cents per unit per month, in accordance with the By-Laws of said Company and the subscription of said member signed on the 28 day of April, 1926.

H. L. Ewing

Secretary.''

(Corporate Seal)

One was dated April 28, 1926, and the other May 4, 1926.

In August, 1926, Sumrall brought an action against The Brevard County Building and Loan Association in the Circuit Court for Brevard County for damages in the sum of one thousand dollars. The declaration contained five counts. The first three were common counts for money paid by the plaintiff to the defendant at its request; for money received by the defendant for use of the plaintiff and for money lent by the plaintiff to the defendant. The remaining two counts were in tort for the recovery of the money paid on April 26th to the defendant on the subscription for one hundred units of the capital stock of the defendant and for the money paid on May 3, 1926, on a like subscription.

In the two latter counts it is alleged that the defendant through its agent represented to the plaintiff, first, that the money derived from the sales of units of the stock in the City of Cocoa would be kept in the City; second, that the defendant would continue to keep and maintain an office for its business in the City and have its agent present thereat; third, that the defendant was a new company, had no outstanding debts and ''had no

business done''; fourth, that the by-laws of the corporation provided that if at any time a purchaser desired to withdraw from the purchase of such units that it could be done upon giving sixty (60) days notice in writing to the defendant and the money previously paid would be refunded to the purchaser and that such by-law would apply to the plaintiff's purchase of units. It is alleged that the agent said to the plaintiff that the latter ''need not take the time and trouble to read the subscription to be signed and which defendant did sign, nor the by-laws of the defendant, that plaintiff should take the word of the said agent as such agent of the defendant, who was then and there acting within the line and scope of his authority''.

It is alleged that the plaintiff relying upon those representations purchased the units. A copy of the certificate which he received, and which has been hereinbefore set out in full, was attached to the declaration and made a part of it.

It is alleged that each of the representations were false and were relied upon by the plaintiff who was mislead and defrauded by them; that they were representations as to material facts and the plaintiff was induced by them to purchase the units. It is alleged that the plaintiff has given ''sixty days notice in writing as represented by said agent as required'' but the defendant has failed and refused to return the money of the plaintiff theretofore paid, although the plaintiff demanded its return in the notice. The count concludes with the allegation that by reason of ''said false and fraudulent representations, which induced plaintiff to purchase said units as aforesaid, the plaintiff has been damaged in, the sum of five hundred ($500.00) dollars, and brings this

suit, and claims of the defendant the said sum of Five hundred ($500.00) dollars, damages.''

The fifth count is in the same language substantially and relates to the purchase of one hundred units on the 4th day of May, 1926. There was one other element of alleged material misrepresentation as to the last purchase and is set out in the fifth count which did not exist in the first purchase and is not mentioned in the fourth count. That element consisted in a representation by the alleged agent of the defendant that the latter was limited by the laws of Florida as to the time in which the ''quota of subscriptions allotted'' to the City of Cocoa should be completed; that the limitation expired on the night of May 4, 1926; that the defendant ''lacked one hundred units of having the quota of the City of Cocoa fully sold''; that they had been in fact sold to ''another person, but said person required a day or two yet, to raise the necessary cash payment thereon, that if plaintiff would buy said one hundred (100) units, that the said agent would have the said quota complete, and when the said other person did come in to complete his said purchase, that plaintiff could transfer the units so purchased to said person, and receive the cash payment made thereon; and that if said other person did in fact fail to purchase the said units, that the defendant, under its by-laws would allow the plaintiff to withdraw the money so paid under the conditions as heretofore expressed in this count and represented to plaintiff by the defendant through its said agent''.

This count also closes with the same allegation as to damages resulting to the plaintiff by reason of the false representations and closes with a claim for damages in the sum of one thousand dollars.

The defendant pleaded the general issue applicable to the common counts and the general issue applicable to a declaration on a simple contract. The parties did not treat counts four and five as declarations in an action on the case for fraud and deceit but treated the two counts as declaring upon a simple agreement for the return of the money paid by the plaintiff upon his request. Then, according to the record, followed a demurrer to counts four and five, no ruling upon it; amended counts four and five, which contained no material variation from the original; a demurrer to the amended counts, which was sustained and then another order six months afterwards sustaining the demurrer to the declaration, which embraced the common counts. Then six months afterwards counts four and five were amended by "filing herewith Counts A. and B thereto respectively". These new counts or amendments contained no new element or basis for a cause of action not already contained in the original counts. The name of the agent was given in the amended counts.

A demurrer to the amended counts, a motion to strike portions of them, and a motion for compulsory amendment were interposed. The demurrer was sustained and the parties seemingly went to trial on the general issue to the common counts, although according to the record the court had sustained a demurrer to the declaration.

From this point the record becomes uncertain. A motion for a new trial made in defendant's behalf was granted in November, 1927, and then in March, 1928, a judgment for the plaintiff was entered in the sum of Five Hundred Dollars. The defendant moved again for a new trial but the motion was denied and the court allowed "ninety days within which to prepare, present

and file its bill of exceptions herein". This order was made on March 31, 1928. The record recites that "on the 9th day of October, A. D. 1928, the defendant filed Notice of Settling Bill of Exceptions". A writ of error was obtained on August 15, 1928, and dismissed on motion of plaintiff in error on September 25, 1928, and another writ was issued on September 26, 1928.

In the preparation of the bill of exceptions no regard was paid to the form prescribed by the rules but it appears to have been signed by the Judge on June 28, 1928, although not filed until October 9th.

It is only by inference that this court may assume that the case was tried upon the three common counts as a demurrer to the declaration had been sustained after which those counts were not amended as indeed was unnecessary. The case seems to have been tried upon the theory that if the defendant obtained the money from the plaintiff by false representations of any facts howsoever immaterial or unrelated made by persons representing themselves as agents of the defendant the plaintiff was entitled to recover for money paid to the defendant by plaintiff or for money received by the defendant for use of the plaintiff or for money lent by the plaintiff to the defendant.

The lengthy statement of the case, as the record discloses superficially, is made in the hope that counsel may perceive the futility of inexpert labor and in the preparation of records for the appellate court should try and eliminate all unessential matters. If it is true that the case was tried on the common counts there was no conceivable use to be served by incorporating in this record any matter relating to the fourth and fifth counts, yet such matters comprised over fifty pages of the fifty-two or three composing the record proper.

The case as tried upon the three common counts was an action of implied assumpsit. A promise presumed by law to have been made by the defendant although he had made no express promise. The action of assumpsit is an equitable action in nature because of the presumption from defendant's conduct of the existence of the obligation forming the basis of the action but the undertaking is never implied where the defendant has made an express promise. See Puterbaugh's Pleading and Practice (Com. L.) Eighth Ed. 77.

The principle of the equitable quality of the action of general assumpsit has been recognized several times by this court. Hawkins v. Garrison, 97 Fla. 156, 120 South. Rep. 309.

But that principle has relation to the implied obligation. When the defendant has received money or goods from the plaintiff at the defendant's request the law implies the promise to pay a reasonable price for the goods or a return of the money with a reasonable charge for the use of it, but the action of assumpsit was never intended to supply the purpose of an action on the case for deceit and fraud.

While this court has held that where a person has been induced by fraud to pay over money to another such person is entitled to his action for its recovery, it has not held that an action of general assumpsit would supplant an action on the case for damages for deceit and fraud.

The evidence in this case does not support the common counts. It is of such character throughout as might have supported the fourth and fifth counts, if they had been deemed to be legally sufficient as stating a cause of action, but the court held them to be insufficient. If the counts

were insufficient in law to state a cause of action how could the evidence in support of their allegations be sufficient to support an action of general assumpsit?

One must recover, if at all, upon the case made by his declaration, not on the case made by the evidence if it is different from the one made by the declaration.

The defendant was called upon to answer the declaration on which it went to trial not on the counts which were held to be insufficient. The evidence may have supported the allegations of the fourth and fifth counts, assuming but not deciding that the agency of the stock salesman who sold the certificates to the plaintiff was established, but that case is not the one upon which the defendant was called to trial.

The judgment of the court is reversed.

BUFORD, C.J., AND BROWN, J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J. concur in opinion and judgment.